## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

**MALCOLM TAYLOR,**
*on behalf of himself*
*and all others similarly situated*,

        **Plaintiff,**

**v.**                                                    **CIVIL ACTION NO. ____**

**EQUIFAX INFORMATION SERVICES, LLC,**

        **Defendant.**

### <u>CLASS ACTION COMPLAINT</u>

COMES NOW the Plaintiff, Malcolm Taylor ("Plaintiff" or "Mr. Taylor"), on behalf of himself and all others similarly situated, by Counsel and as for his Complaint against the Defendant, he alleges as follows:

### PRELIMINARY STATEMENT

1.      This is a class action for statutory, actual and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x, ("FCRA").

2.      Accuracy of information and transparency are core goals of the FCRA since Congress enacted it in 1970. Key to Congress's aspirations is the ability of consumers to dispute inaccurate information and have those inaccuracies corrected. The FCRA makes this right absolute, demanding that consumer reporting agencies

("CRAs") like Defendant investigate a consumer's claim that "any item" of information is incomplete or incorrect. 15 U.S.C. § 1681i(a).

3.     Importantly, nothing in the FCRA allows a CRA to delay or interrupt its investigation of a dispute once received. *Id.* Indeed, the Act provides for the opposite—requiring CRAs to, for example, forward the dispute to anyone who furnished to the CRA information relative to the dispute within five business days of receiving the dispute. 15 U.S.C. § 1681i(a)(2)(A).

4.     Here, Equifax ran afoul of the FCRA's investigation requirements by demanding that Plaintiff provide multiple, needless forms of identification before it would even begin to investigate his disputes of inaccurate information.

5.     Nothing in the FCRA permits or justifies Equifax's creation of roadblocks to the processing of disputes, yet Equifax repeatedly and unjustifiably requires consumers to provide additional evidence of identity before it will begin an investigation.

6.     Plaintiff brings nationwide class claims against Equifax for failing to investigate his disputes and, instead, requiring that he provide document after document confirming his identity to Equifax's satisfaction. As alleged herein, Equifax will sell a report about Plaintiff to someone who provides substantially less information than Plaintiff did with his disputes.

## JURISDICTION

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8.      Venue is appropriate here pursuant to 28 U.S.C. § 1391(b)(1), because this is the judicial district in which the Defendant resides.

## PARTIES

9.      The Plaintiff is a natural person residing in Virginia, and at all times relevant to this Complaint, was a "consumer" as defined by the FCRA.

10.     Defendant Equifax Information Services, LLC ("Equifax") is a domestic corporation with its principal office located at 1550 Peachtree Street, N.W., Atlanta, GA, 30309. Equifax does business through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092.

11.     At all times relevant to this Complaint, Equifax was a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

## STATEMENT OF FACTS

12.     In or around October 2022, Plaintiff discovered an account with Credit Acceptance Corporation ("Credit Acceptance") reporting derogatory information on his credit file with Equifax.

13.     The information was inaccurate. Plaintiff has never opened an account with Credit Acceptance or authorized anyone to open a Credit Acceptance account on his behalf.

14.     Plaintiff is a victim of identity theft. The Credit Acceptance account was opened fraudulently.

15.     Shortly after learning about the account, Plaintiff disputed the information to Equifax using Credit Karma.

16.     On or around November 8, 2022, Plaintiff learned that Equifax did not delete the account in response to the dispute that Plaintiff sent via Credit Karma.

17.     On December 28, 2022, Plaintiff obtained a copy of his Equifax credit file, which showed that Equifax was still attributing the fraudulent Credit Acceptance account to Plaintiff.

18.     On or around January 13, 2023, Plaintiff mailed a written dispute to Equifax regarding the Credit Acceptance account. In the letter, Plaintiff provided his full name, address, telephone number, date of birth, and his full Social Security Number. The letter was notarized.

19.     Plaintiff did not receive a timely response (or any response) from Equifax following his January 2023 dispute.

20.     Equifax never conducted an investigation in response to Plaintiff's January 13, 2023 dispute.

21.    On April 11, 2023, Plaintiff obtained a copy of his credit file with Equifax, which showed that Equifax was still reporting the fraudulent Credit Acceptance account as belonging to Plaintiff.

22.    On or around June 13, 2023, Plaintiff mailed another written dispute to Equifax regarding the Credit Acceptance account. In the letter, Plaintiff again provided his full name, address, telephone number, date of birth, and his full Social Security Number. The letter was notarized.

23.    On or around June 27, 2023, Equifax mailed a letter to Plaintiff refusing to investigate his dispute, claiming that it was "unable to locate a credit file in [its] database with the identification information [Plaintiff] provided."

24.    Contrary to this claim, the information contained in Plaintiff's dispute letter is the identical information contained in Plaintiff's credit disclosure dated April 11, 2023. A copy of this letter is attached to this Complaint as Exhibit A.

25.    Plaintiff mailed the requested additional information to Equifax, and it was delivered on July 15, 2023.

26.    Even after Equifax received the additional information it requested from Plaintiff, Plaintiff did not receive a response from Equifax to his June 13, 2023 dispute.

27.    Equifax never conducted an investigation in response to Plaintiff's June 13, 2023 dispute.

28.    On or around March 20, 2024, Plaintiff mailed another written dispute to Equifax regarding the Credit Acceptance account. In the letter, Plaintiff provided his full name, address, telephone number, date of birth, and his full Social Security Number. Like the January 2023 letter and the June 2023 letter, the March 2024 letter was notarized.

29.    On or around April 1, 2024, Equifax mailed a letter to Plaintiff refusing to investigate his dispute once again, claiming –as it did before—that it was "unable to locate a credit file in [its] database with the identification information [Plaintiff] provided."

30.    Plaintiff mailed the requested additional information to Equifax, and it was delivered on April 18, 2024.

31.    Even after Plaintiff provided Equifax with the additional information it requested, Plaintiff did not receive a response from Equifax to his March 2024 dispute.

32.    Equifax never conducted an investigation in response to Plaintiff's March 20, 2024 dispute.

33.    Equifax has been sued repeatedly for refusing to investigate disputes by consumers, falsely claiming that the consumer did not provide sufficient identification information.

34.    Equifax does not make money by processing disputes from consumers – in fact, this is purely an expense for Equifax. As a result, Equifax now processes consumer disputes using an outsourced vendor in India for a small fraction of the amount that Equifax previously spent on disputes when they were processed in the United States.  It is in Equifax's interest to reject disputes for any possible reason, as doing so saves money.

35.    For example, Equifax informed Plaintiff that it would not process his disputes unless he provided significant information and documentation, including:

a)    Pay stub with complete U.S. Social Security number;
b)    W-2 form with complete U.S. Social Security number;
c)    Valid Social Security card;

36.    In addition, Equifax also informed Plaintiff that it would require a copy of one of the following documents before it would process his disputes:

a)    Driver's license
b)    Rental/lease agreement or house deed
c)    Pay stub with address
d)    Utility bill

37.    Notwithstanding these onerous requirements placed on consumers – for which no justification is found in the FCRA – Equifax sells credit reports to its banking industry customers if those customers provide as little as a consumer's first name, last name, and any previous address.

38.    Equifax sells credit reports to its banking industry customers and debt collectors even when the customer does not provide a Social Security Number for the subject of the requested report.

39.    Equifax does not require that these customers provide a copy of a government issued identification card for the subject of the requested report.

40.    Furthermore, Equifax does not require that these customers provide a copy of a utility bill for the subject of the requested report.

41.    Discovery will show these hurdles created by Equifax are designed to reduce the number of disputes that its employees (and now foreign agents in India) must process.

42.    Equifax's onerous requests for additional information before it will even *begin* investigating a dispute is different than requiring assurances of the consumer's identity before it turns over the completed dispute *results* to the consumer.

43.    In other words, it might mean something to make sure Equifax is giving the right consumer the results of a dispute (assuming those results contained the consumer's credit file), but there is no reason to demand multiple, repetitive proofs of identity before Equifax will begin an *investigation* of a dispute.

44.     Further, even then, Equifax rarely sends the consumer their actual credit file with its "results" of an investigation and the results do not contain a consumer's SSN, Date of Birth or other sensitive information.

45.     Therefore, according to Equifax's unjustified and onerous requirements, a consumer who lives in a rural area and does not have access to a photocopier to make a copy of a government issued identification card and/or a utility statement could not have their dispute processed at all.

46.     Similarly, a consumer who does not possess government issued identification or does not have a utility bill, bank statement, or insurance statement could not have their dispute processed.

47.     Further, this process causes actual economic harm to consumers such as Plaintiff and similarly situated consumers because they are made by Equifax to spend additional money on copies and postage, and economic resources such as their time, just to exercise their right to obtain  a dispute investigation under the FCRA.

48.     Plaintiff also suffered actual harm from the publication of inaccurate credit information to a third party that should have been removed and corrected, but for the FCRA violations alleged herein.

## CLASS ACTION ALLEGATIONS

49.     **The FCRA Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this

action individually and on behalf of a class initially defined as follows (the "Class"):

> All natural persons residing in the United States who were the subject
> of a consumer report prepared by Defendant within two years prior to
> the filing of this lawsuit for who made a written dispute and provided
> their name, address and a copy of a government issued identification in
> making a dispute pursuant to 15 U.S.C. §1681i(a), but where Equifax
> did not begin the dispute investigation because it requested further
> identifying information.

50.     **Numerosity.**  The Class members are so numerous that joinder of all

is impractical. Class members are geographically disbursed across the United States,

further hampering joinder. Plaintiff's counsel is in possession of a number of letters

received by consumers that are substantially similar to those that Defendant mailed

to Plaintiff.  The names and addresses of the Class members are identifiable through

documents maintained by Defendant, and the Class members may be notified of the

pendency of this action by published and/or mailed notice.

51.     **Existence and Predominance of Common Questions of Law and

Fact**.  Common questions of law and fact exist as to all members of the Class. These

questions predominate over the questions affecting only individual members. These

common legal and factual questions include, among other things: (a) whether

Defendant had a right to request consumers' full social security numbers or other

identifying information before processing their disputes; (b) whether Defendant

actually required a social security number or more identifying information in order to locate the consumers' files; (c) whether Defendant failed to conduct a reinvestigation of consumers' disputes; (d) whether Defendant failed to provide notice of consumers' disputes to the furnishers of the disputed information; and (e) whether Defendant acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

52.   **Typicality.**   Plaintiff's claims are typical of the claims of each Class member and all are based on the same facts and legal theories. Discovery will show Defendant sent the same or substantially the same standardized letters to consumers across all states located within the United States during the full class period.  For purposes of class certification only, Plaintiff seeks statutory and punitive damages. Plaintiff would seek individual or actual damages only if class certification is denied. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the Class.

53.   **Adequacy.**   Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions.  Neither Plaintiff nor his Counsel have any interests that might cause them not to vigorously pursue this action.  Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

54.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.      As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member.  Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues.  The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Consumer claims generally are ideal for class treatment as they involved may, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually.  Further, most consumers for whom Defendant refused to process disputes in violation of the requirements of the FCRA are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation.  Individual litigation of the uniform issues in this case would be a waste of judicial resources.  The issues at

the core of this case are class wide and should be resolved at one time.  One win for one consumer would set the law for every similarly situated consumer.

## CLAIMS FOR RELIEF

### COUNT ONE: Violation of 15 U.S.C. § 1681i(a)(1)(A)
### <u>CLASS CLAIM</u>

55.    Plaintiff incorporates and realleges all factual allegations set forth in this Complaint.

56.    Defendant violated 15 U.S.C. § 1681i(a)(1)(A) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently update the information in the file within 30 days.

57.    As a result of this conduct, Plaintiff and each Class Member suffered a delay in the processing of their disputes.

58.    Plaintiff and each Class Member suffered actual harm in the form of credit injury, mailing and paper expense, and time lost as a result of Defendant's refusal to reinvestigate their  disputes within the time required, which they are entitled to recover pursuant to 15 U.S.C. §§ 1681n and 1681o.

59.    Plaintiff and each class member suffered actual economic harm in the form of additional postage, loss of time spent processing subsequent disputes, and costs of copies.

60.     Defendant's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.

61.     Plaintiff and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from Defendant pursuant to 15 U.S.C. § 1681n.

**COUNT TWO:**
**Violation of 15 U.S.C. § 1681i(a)(4)**
**CLASS CLAIM**

62.     Plaintiff incorporates and realleges all factual allegations set forth in this Complaint.

63.     Defendant violated 15 U.S.C. § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Plaintiff's and Class Members' communications.

64.     As a result of this conduct, Plaintiff and the Class Members suffered a delay in the processing of their disputes by Equifax.

65.     Plaintiff and each Class Member suffered actual harm in the form of credit injury, mailing and paper expense, and time lost as a result of Defendant's refusal to reinvestigate their disputes within the time required, which they are entitled to recover pursuant to 15 U.S.C. §§ 1681n and 1681o.

66.     Plaintiff and each class member suffered actual economic harm in the form of additional postage, loss of time spent processing subsequent disputes, and costs of copies.

67.     Defendant's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.

68.     Plaintiff and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from Defendant pursuant to 15 U.S.C. § 1681n.

## COUNT THREE:
### Violation of 15 U.S.C. § 1681i(a)(2)
### INDIVIDUAL CLAIM

69.     Plaintiff incorporates and realleges all factual allegations set forth in this Complaint.

70.     Defendant violated 15 U.S.C. § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to provide notice of Plaintiff's disputes to the furnisher of the disputed information within the time required.

71.     Had Equifax forwarded Plaintiff's dispute and information as required, Credit Acceptance would have been obligated to conduct its own independent substantive investigation—which, if done, would have caused the removal of the fraudulent account.

72.     As a result of this conduct, Plaintiff suffered actual damages in the form of credit injury, emotional and mental distress and frustration injuries, reputational injury, and time lost as a result of Defendant's refusal to reinvestigate his disputes within the time required, which he is entitled to recover pursuant to 15 U.S.C. §§ 1681n and 1681o.

73.     Defendant's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.

74.     Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from Defendant pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT FOUR:
### Violation of 15 U.S.C. § 1681e(b)
### INDIVIDUAL CLAIM

75.     Plaintiff incorporates and realleges all factual allegations set forth in this Complaint.

76.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff when it reported the inaccurate account information from Credit Acceptance.

77.    As a result of Equifax's violations of 15 U.S.C. §1681e(b) Plaintiff suffered actual damages, including but not limited to: lost credit opportunities, time attempting to get the errors fixed, emotional and mental distress and frustration injuries, lost money spent on postage for dispute letters, harm to reputation, and loss of privacy.

78.    Further, after Plaintiff's disputes put Equifax on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of its creditor-customers, Equifax ignored that information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of Plaintiff's credit reports.

79.    Equifax furnished multiple consumer reports to third parties containing the inaccurate tradeline information and it did so after receiving notice of these inaccuracies.

80.    The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

81.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

82.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the putative class members, moves for class certification and for statutory, and punitive damages against Defendant on a class basis; for actual damages, statutory damages and punitive damages as well on an individual basis; for attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

MALCOLM TAYLOR,
*on behalf of himself*
*and all others similarly situated*

By: /s/ *Jeffrey B. Sand*
Jeffrey B. Sand
Andrew L. Weiner
WEINER & SAND LLC
800 Battery Ave. Suite 100
Atlanta, Georgia 30339
Phone: (404) 205-5029
Facsimile: (866) 800-1482

Email: js@wsjustice.com
Email: aw@wsjustice.com

Drew D. Sarrett, *Pro Hac Forthcoming*
CONSUMER LITIGATION ASSOCIATES, P.C.
626 E. Broad Street, Suite 300
Richmond, Virginia 23219
Phone: (804) 905-9900
Facsimile: (757) 930-3662
Email: drew@clalegal.com

Leonard A. Bennett, *Pro Hac Forthcoming*
Craig Marchiando, *Pro Hac Forthcoming*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
Email:lenbennett@clalegal.com
Email craig@clalegal.com

*Attorneys for Plaintiff*